UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN SCOTT,

                Plaintiff,                       Case No. 19-cv-12655

v.                                   Honorable Nancy G. Edmunds

INTER-CON SECURITY SYSTEMS, INC.,

                Defendant.

_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO COMPEL
ARBITRATION [28] AND DISMISSING CASE**

      This is an employment discrimination action initiated by Plaintiff Kevin Scott against his former employer, Defendant Inter-Con Security Systems, Inc. ("Inter-Con"). Pending before the Court is Inter-Con's Motion to Dismiss and Compel Arbitration. (ECF No. 28.) Plaintiff opposes the motion (ECF No. 30) and Inter-Con has filed a reply (ECF No. 26). The Court held a hearing on this motion on July 26, 2021. For the reasons set forth below and at the July 26, 2021 hearing, Inter-Con's motion to dismiss is GRANTED.

**I.    Background**

      Plaintiff, an African American man, was employed with Defendant Inter-Con as a security officer at a passport agency from 2010 until 2019. On February 1, 2019, Plaintiff alleges that he and his coworker, Steven Agar, were tasked with accompanying a group of contractors as they did work in a secure area. Plaintiff claims he escorted the contractors off the premises once their work had been completed, but his supervisors accused him of abandoning his job duties and leaving early. Things apparently escalated

over the next few days and on March 1, 2019, Inter-Con terminated Plaintiff's employment and revoked his security clearance.

Plaintiff claims that Steven Agar, who is white and held the same job as Plaintiff, was accused of the same misconduct, but was permitted to voluntarily resign and retain his security credentials. Because Plaintiff was not afforded the same opportunity to resign and maintain his security clearance, he contends he was subjected to discriminatory treatment.

Based on these facts, Plaintiff filed an action in this Court on September 10, 2019. (*See* ECF No. 1.) In his complaint, Plaintiff accuses Inter-Con of racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. (Count I) and Michigan's Elliot-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws § 37.2201 et seq. (Count II). Plaintiff also asserts a claim of "negligent hiring/supervision" under Michigan common law related to Inter-Con's employment and retention of certain coworkers whom Plaintiff claims wrongfully accused him (Count III). Those coworkers and all claims against them have previously been dismissed by this Court. (ECF No. 27.)

## II.    Legal Standard

Inter-Con now moves to compel arbitration and dismiss the complaint pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*., and an arbitration agreement signed by Plaintiff and dated May 3, 2010. (ECF No. 28, PageID.144, 160-165.) The Sixth Circuit has repeatedly applied the FAA to arbitration agreements formed in the employment setting. *See e.g., McMullen v. Meijer, Inc.*, 355 F.3d 485, 489 (6th Cir. 2004). Most recently, in *Boykin v. Family Dollar Stores of Michigan, LLC*, the court clarified that a party to a written arbitration agreement may invoke arbitration in one of two ways — by

requesting a stay under § 3 while "any issue" is arbitrated, or by moving under § 4 for an "order directing that such arbitration proceed in the manner provided for in [the arbitration] agreement." No. 20-1153, --- F.4th ----, 2021 WL 2708859, at *2, 3 (6th Cir. July 1, 2021) (citing 9 U.S.C. §§ 3, 4). If the party seeking arbitration does not cite § 3 or adequately request a stay, it "forfeit[s] reliance on § 3 and its remedy" and the Court should consider the application as a motion brought pursuant to § 4. *Id.* at *3.

Arbitration clauses in contracts are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 4 thus allows the court to consider only narrow issues "relating to the making and performance of the agreement to arbitrate." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967). "If, after hearing from the parties, the court is 'satisfied that the making of the agreement' (or its breach) 'is not in issue,' the court 'shall make an order' compelling arbitration." *Boykin*, --- F.4th ----, 2021 WL 2708859, at *3 (citing 9 U.S.C. § 4).

To decide whether a party has put the agreement "in issue," the court should consider any evidence from outside the pleadings as it would consider that evidence when ruling upon a motion for summary judgment under Rule 56. *Id.* at *4. This is because "[t]he question whether the party opposing arbitration has put the making of the arbitration contract 'in issue' looks a lot like the question whether a party has raised a 'genuine issue as to any material fact.' " *Id.* (quoting Fed. R. Civ. P. 56(c) (1938)). If there is a material factual dispute over whether the party opposing the motion authorized an arbitration contract, § 4 instructs courts to "proceed summarily to the trial thereof." 9 U.S.C. § 4.

## III.    Analysis

Before Inter-Con hires its potential employees, including potential security guards, the applicants participate in an "onboarding" process which requires them to verify their employment status, complete tax-related documents, and various other tasks. (ECF No. 28-6, PageID.288-289.) Plaintiff participated in this process and executed the "Mutual Agreement to Arbitrate Claims" (hereinafter, the "agreement") with a wet signature on May 3, 2010. (ECF No. 28-3, PageID.165.) That agreement provides, in relevant part:

> You and the Company mutually consent to the resolution by arbitration of all claims or controversies, ("claims"), past, present, or future, whether or not arising out of your employment (or its termination) . . . The claims covered by this Agreement include, but are not limited to . . . tort claims, claims for discrimination (including, but not limited to race . . .); . . . claims under Title VII of the Civil Rights Act of 1964 . . . . or similar Federal or State Statutes. . . . [A]ny claims of wrongful termination, employment discrimination, retaliation or harassment of any kind, as well as any claim related to the termination of any express or implied employment agreement shall be interpreted under this agreement. The obligation to arbitrate such claims will survive the termination of your employment.

(ECF No. 28-2, PageID.160-61.)

Because Plaintiff signed the agreement, it is presumed under both Michigan and California law,[1] that he read the agreement and understood its contents. *Stewart v. Preston Pipeline Inc.*, 36 Cal. Rptr. 3d 901, 921 (Cal. Ct. App. 2005); *In re Johanson's Est.*, 144 P.2d 72, 79 (Cal. Dist. Ct. App. 1943); *McKinstry v. Valley Obstetrics-*

---

[1] During the July 26, 2021 hearing, the parties referred to Michigan law, but the arbitration agreement contains a choice-of-law provision that identifies California state law as the applicable law for any proceeding not governed by the Federal Arbitration Act. (ECF No. 28-2, PageID.160.) Because there is no question as to whether both parties agreed to be bound by the agreement, the choice-of-law provision applies here. *See Heiges v. JP Morgan Chase Bank, N.A.*, 521 F. Supp. 2d 641, 646 (N.D. Ohio 2007). ). Indeed, even if the Court were to find Plaintiff's arguments regarding duress persuasive, "[a] contract signed under economic duress is voidable by the victim, not void." *Cumberland & Ohio Co. of Texas, Inc. v. First American Nat. Bank*, 936 F.2d 846 (6th Cir. 1991).

*Gynecology Clinic, P.C.*, 405 N.W.2d 88, 96 (Mich. 1984). Nevertheless, Plaintiff argues Inter-Con's motion to compel arbitration should be denied because he signed the agreement under duress. (ECF No. 30 at 6-7.) This is because he felt "pressured into accepting the position due to financial circumstances and the state of the economy in the months following the recession of 2009" and Inter-Con's offer of employment was contingent on his acceptance of the agreement. (*Id.*) Moreover, Plaintiff contends that his request for time to consult with an attorney was denied and he did not understand he was waiving any rights by signing the agreement. (*Id.* at Ex. A ¶¶ 7, 9.) Thus, Plaintiff argues, the agreement to arbitrate is not binding.

### A. Duress

Courts apply state contract law to determine whether a binding agreement to arbitrate exists. *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1995); *see also Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 393 (6th Cir. 2003) ("the FAA preempts state laws and policies regarding arbitration[,]" although state contract law "governs in determining whether the arbitration clause itself was validly obtained, provided the contract law applied is general and not specific to arbitration clauses."). Under California law, applicable per a choice-of-law provision in the parties' agreement, the doctrine of duress "may come into play upon the doing of a wrongful act which is sufficiently coercive to cause a reasonably prudent person faced with no reasonable alternative to succumb to the perpetrator's pressure." *Rich & Whillock, Inc. v. Ashton Dev., Inc.*, 204 Cal. Rptr. 86, 89 (Cal. Ct. App. 1984).

In *Rich*, a general contractor agreed to pay for various charges invoiced by a subcontractor. *Id.* at 86. Upon completion of the work, the general contractor refused to

pay, but instead presented a "take it or leave it" offer of less than the agreed upon amount, with knowledge that the subcontractor "would face financial ruin if [it] did not accept the lesser sum." *Id.* The subcontractor accepted the lesser payment and released any right to additional payment. *Id.* The court set aside the release, and found the general contractor liable for the full invoiced amount, finding the general contractor's bad faith refusal to pay the full amount to which it was obligated constituted the required wrongful act to state the defense of duress. *Id.*

Similar to *Rich*, and in circumstances much different than those present here, the California Court of Appeal found in an unpublished decision that an employee who sued her employer for discrimination had signed an arbitration agreement under duress. *See Canales v. Perf. Team Triangle West*, No. B155659, 2003 WL 361242, at *3 (Cal. Ct. App. Feb. 20, 2003). There, the employee's declaration indicated she was asked to sign the agreement well after she began her employment and earned wages. An individual approached the employee, arbitration agreement and the employee's paycheck in hand, and explained she would not receive her paycheck unless she signed the agreement. *Id.* at *2. The employee was busy at work and signed the agreement believing she had no alternative. *Id.*

Here, Plaintiff may have felt "pressured" by Inter-Con to sign the agreement, but unlike in *Rich* or *Canales*, there is no evidence to indicate Inter-Con committed a wrongful act or that Plaintiff was left with no reasonable alternative. Indeed, Plaintiff could have chosen to look for alternative employment or decided not to work at all.

Moreover, Plaintiff has not provided authority for the proposition that Inter-Con was required to provide him an opportunity to consult with an attorney and it is unclear whether

Plaintiff had time to do so before signing as Plaintiff neglected to include this information in his affidavit. The record does show, however, that Plaintiff had ample opportunity to consult an attorney or dispute the arbitration agreement after he signed it in May of 2010 and before his 2019 termination. *See Cumberland & Ohio Co. of Texas, Inc. v. First American Nat. Bank*, 936 F.2d 846 (6th Cir. 1991) ("A party seeking to avoid a contract induced by economic duress must act promptly upon removal of the duress to avoid the contract."). Furthermore, Plaintiff's conduct following the "onboarding" process suggests he accepted the arbitration agreement by continuing his employment. *See Tillman v. Macy's, Inc.*, 735 F.3d 453 (6th Cir. 2013). Thus, Plaintiff has not satisfied his burden of showing he did not voluntarily and knowingly waive his right to a jury trial. *See K.M.C. Co. v. Irving Trust Co.*, 757 F.2d 752, 758 (6th Cir. 1985).

For these reasons, the Court finds no material factual dispute as to whether the agreement is valid and enforceable. The Court now turns to the arbitration agreement itself to decide whether the claims Plaintiff now brings are arbitrable.

### B. Arbitrability

Plaintiff avers that, even if the arbitration agreement is enforceable, his state law tort claim and claims of employment discrimination are not arbitrable. (ECF No. 30 at 8.) But, "[i]t is well settled that judicial protection of pre-dispute arbitral agreements extends to agreements to arbitrate statutory employment discrimination claims." *McMullen*, 355 F.3d at 489. Furthermore, courts examine "arbitration language in a contract in light of the strong federal policy in favor of arbitration, resolving any doubts as to the parties' intentions in favor of arbitration." *Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498, 503 (6th Cir. 2007*); see also Glazer*, 394 F.3d at 450 ("[I]t is well-established that any

doubts regarding arbitrability must be resolved in favor of arbitration, because there is a strong presumption in favor of arbitration under the FAA.") (internal citation omitted).

Additionally, despite Plaintiff's argument to the contrary, Plaintiff's position as a security guard at a passport agency does not exempt him from the FAA. Section 1 of the FAA states, in relevant part, that "nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." This exception has been narrowly construed with the Sixth Circuit concluding that § 1 of the FAA applies only to employment contracts of those "actually engaged in the movement of goods in interstate commerce in the same way that seaman and railroad workers are." *Asplundh Tree Expert Co. v. Bates*, 71 F.3d 592 (6th Cir. 1995). *See also Bacashihua v. U.S. Postal Service*, 859 F.2d 402, 405 (6th Cir. 1988) (finding postal workers to be engaged in interstate commerce as "[t]hey are responsible for dozens, if not hundreds, of items of mail moving in 'interstate commerce' on a daily basis.") (citation omitted). The evidence in this case suggests that Plaintiff provided security services in a single, stationary location and was not involved in commerce at all. *See* COMMERCE, Black's Law Dictionary (11th ed. 2019) ("The exchange of goods and services, esp. on a large scale involving transportation between cities, states, and countries.").

The scope of the agreement also clearly encompasses Plaintiff's claims. The language quoted above states in understandable terms that "tort claims [and] claims for discrimination" including "claims under Title VII of the Civil Rights Act of 1964 . . . or similar Federal or State Statutes" are subject to arbitration. (ECF No. 28-2, PageID.160-161.) In further explanation, the agreement provides: "Except as otherwise provided in this

Agreement, both you and the Company agree that neither of us shall initiate or prosecute any lawsuit . . . in any way related to any claim covered by this agreement." (*Id.* at 161.)

Accordingly, the Court finds that Plaintiff and Inter-Con agreed to arbitrate, that the scope of the arbitration agreement encompasses Plaintiff's claims, and that Plaintiff's claims are arbitrable. *See Glazer*, 394 F.3d at 451 ("When considering a motion to ... compel arbitration under the [FAA], a court has four tasks: first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.")

## III.    Conclusion

For the reasons above, Defendant Inter-Con Security Systems, Inc's Motion to Dismiss and Compel Arbitration is GRANTED and Plaintiff's complaint is DISMISSED in favor of the parties pursuing their dispute according to the terms of the arbitration agreement.

SO ORDERED.

s/  Nancy G. Edmunds
Nancy G. Edmunds
United States District Court Judge

Dated: August 4, 2021

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 4, 2021, by electronic and/or ordinary mail.

s/  Lisa Bartlett
Case Manager